May it please the court. Your Honor, there's three strong reasons for remanding this case. The first one comes from a close reading of 8 U.S.C. 1252 B-4a. That statute requires that the removal decision be based, shall be based, only on the administrative record. Here, the removal order was based on an administrative record that was missing the key exhibit. The removal order was based on the fact that Ms. Tercios-Ortiz could relocate safely in Honduras. And that was, that decision was based solely, entirely on Exhibit 9, but Exhibit 9 is not in the record. Oh, it seems that Exhibit 9 is not in the record. You're right about that. But aren't we looking at the basis for the IJ's ruling here as to cat protection? Yes, Your Honor. Holistically, right? Yes, Your Honor. Holistically, we are. And the basis for the IJ's ruling was that there would be possible safe relocation. Then the BIA changed that to, without notice, without any factual basis, the BIA changed that to reasonable safe relocation. What the actual facts are is that there is no possible safe relocation, and there is no reasonable safe relocation, if the court looks at what the immigration judge and the BIA were purportedly relying on. Didn't they also rely on the testimony of Ms. Tercios-Ortiz when she testified that there were areas where the gang could not go? Yes, Your Honor. There's areas where the gang could not go, but those areas don't indicate that she would be safe there. There was never a finding that she would be, that she could go there and be reasonably safe. And in fact, as a matter of law, the standard is not possible safety and not reasonable safety, but under the Torture Convention, it's under HCFR 208.16c, which means that relocation, the applicant must be able to relocate where it is likely that she will not be tortured. And so, without citing the correct standard, it's difficult to know exactly what the judge meant. Counsel, what I'm struggling with is how to read the law that provides eligibility for cat protection, which has a number of factors to it. One of them is the one that you're pressing here today that was based on Exhibit 9 and perhaps a mischaracterization of Exhibit 9. But there are other factors in that list that would provide for eligibility or not for cat protection. And the IJ seemed to have considered other factors in addition to the one that you're pressing. And as I read the BIA's order, because it's a single judge order and we can look more to a fulsome presentation of the IJ's reasoning, that the BIA incorporated all of that as well. That there was sort of a broader reasoning for why cat protection was denied or your client didn't satisfy her burden to show she was eligible for it. So how should we be thinking about that? The problem with that finding is that the definition of torture was not employed. That's a different issue now. That is a different issue that you're raising. Yes. It comes to that point where the IJ said, gee, there isn't sufficient evidence here of torture. You didn't present that argument before the agency, did you? I don't think we had a holding on that exactly from the IJ, but we did argue the definition of torture, yes, before the agency. That's at page 19 of the administrative record. And that really is the problem because the IJ said the evidence is not sufficient to rise to the level of torture and the evidence is not sufficient to show willful blindness or government acquiescence. But nowhere is any discussion of facts applied to the standard for willful blindness. Nothing there in the decisions. And then when we come to what the sufficiency of the evidence of torture, the actual definition of torture is never cited, never relied on. And the point we're trying to make is that if that definition is relied on, then according to the case law, mental torture needs to be considered. Not just the case law, but according to the black letter law, the definition. I'm sorry. Go ahead. No, you please. If that was true, wouldn't every case where there was a threat be a case of mental torture and everybody would then qualify for CAP protection? That's one way to look at it, but we do have the Vaclav case here in the 10th Circuit that talks about a certain test for when threats rise to the level of persecution. It's an asylum case. It deals with persecution, but it still provides a guide. And it says when these threats are imminent, when these threats are prolonged. And also the regulation deals with the fact that the threat has to be prolonged. Well, you have a finding that there was no imminent threat, right? The agency found there was no imminent threat. The agency did not make that finding. The agency simply made the conclusion that Ms. Hershios did not qualify for the torture convention. It was just a conclusory sentence. The government made the argument in their briefing that it wasn't imminent. But that's really a factual question. It needs to be decided by the fact finder. In this case, the fact finder really didn't entertain mental torture, didn't entertain the Vaclav decision to see if it was imminent and prolonged and intentional. The court did. The fact finder did rely on the fact that even when she refused to deliver drugs, there was three months where no one interfered with her or carried out any threats against her. Isn't that relevant here, both in terms of duress and in terms of CAF? I think you're correct. It is relevant. But three months during COVID is a rare and different situation. There was a pause during COVID. She was able to negotiate a pause during COVID. And during that time, she planned her escape. She staged her escape. And she left during that three-month period as the end of it. And so it's not really that everything was fine for three months. Everything was paused for three months. But she knew if she stayed, she would have to go back to that type of forced labor. Do you agree that the BIA's decision incorporates all of the IJ's reasoning with respect to the CAT protection? Yes, she does. And if you agree with that, and I think that is how I read the record, too, the IJ provided several reasons for determining that your client did not establish a likelihood of torture. And the Exhibit 9-related reason, the relocation reason, was only one of those reasons. And so what I'm struggling with is why we can't conclude that the BIA's ultimate CAT determination is unsupported by substantial evidence here. If, in fact, to determine whether CAT is appropriate, you have a number of non-exhaustive factors. The IJ relied on many, not just the one that you're challenging. And to agree with you, it seems we would have to read the record differently than the one that we have. Your Honor, I think the IJ had three reasons. One is that the facts did not rise to the level of torture. Two is that there was not proof that the government was willfully blind. Three, and this was really, really her main reason. Three was that it was easy to relocate. It was possible to relocate. Those were the three reasons the IJ gave. So let's talk about that. If the first two are true, why does the third matter? If there was no torture or imminent threat of torture, we don't have to worry about relocating, do we? Relocating generally only becomes relevant when somebody is likely to be tortured when they return to their hometown or a certain area of their country. Correct. And, Your Honor, first of all, the main reason that both the BIA and the IJ gave was safe relocation. That might have been their first reason or there's something they focused on the most, but it doesn't obviate the other two reasons. No, no, it doesn't. And that's where I'm bringing up the definition of torture. Because the other two reasons, insufficient evidence, acquiescence, were based on a recitation of facts and a conclusion without any analysis of what torture is under the regulation. Torture under the regulation is mental torture prolonged with an imminent threat. The government contends that that argument is unexhausted and that the argument that the incorrect definition or a legal definition of torture was not applied. Why should we disagree with the government and agree with you that the argument is in fact exhausted here? The government is simply wrong. It's on the administrative record in the BIA appeal brief at page 19 and 20, administrative record 19 and 20. The appellant's attorney says very clearly, quotes very clearly, first of all, the definition of torture, which never happens in any other. Yes, Your Honor. Go ahead. Yeah. The appellant's attorney quotes the definition of torture and I'm sorry, I'll reserve the rest of my time. Before you sit down, I actually have an argument on duress. Yes, Your Honor. First of all, the burden is on your client to prove the elements of duress, even if we recognized duress defense to the persecutor bar. Would you agree with that? Yes, the way the regulation, the regulation is a 208.16 D2. And what the regulation says is first, there's an allegation of a particular serious crime. And then second, there's an opportunity for the applicant to rebut. And then a balancing takes place. And so during that rebuttal, yes, duress traditionally would have been considered in the totality of the circumstances. And again, the question is burden. It would have been your client's burden to meet the elements if we recognized a duress defense to the persecutor bar. The elements that we recognize an immediate threat of death or serious bodily injury, a well grounded fear that the threat will be carried out and no reasonable opportunity to escape the threatened harm. Now, our case law is pretty strict on meeting those elements. Would you agree with that? Yes, Your Honor. And I do, in fact, support that. I do think it's arguable. And if we had an honest who are working with the honest definition of torture that that we could rebut, we could rebut the allegation of serious reasons to believe. Well, she escaped, though. I mean, for three months, she told him she didn't want to do it anymore. She effectively escaped. She did. She she she got away. She she paused for three months and then she escaped in the early morning. Right. And I don't I want to be clear. I'm not I don't think by escape we mean that you were able to escape and come to come to another country. Maybe we do. I don't I don't know. But I think she was somehow a way. I mean, you call it a pause, whatever. She was able to get away from from the people for a period of at least three months before she came to the United States. Yes, Your Honor. But based on her testimony, which was deemed credible, she said she negotiated a pause. OK, because let's go with fair. Fair enough. Let's I know you want some rebuttal. Let's see if Judge Rossman has anything else.  No. OK, we're going to give you a little bit of a rebuttal when you come back. Thank you. OK, thank you. Judge McHugh turned over the timer to me. She might not give you that. Well, then she's lucky. He's lucky. I'm sick. It pleases the court, Your Honor. Some remnants on behalf of United States Attorney General. I plan to argue the duress argument first. I know we're in receipt of petitioners motion to supplement the record in light of the new decision and we don't oppose supplemental briefing. However, we also believe the board has the correct statutory interpretation of this issue. Petitioner, meanwhile, has provided no good reason for why there should be a duress exception written into the statute. What is the precedential import of the BIA decision on us? Well, Post Loper Bright, it's just persuasiveness. And I think they do provide persuasive reasons for why there is no duress exception to this statute. But also just going on the issue, the party presentation petitioners also not provided any reasons. He's analogized the particularly serious crime statute. I don't think he's pointing to any case for the considered duress in that statute either. So if his argument is to import that statute onto this statute, then that's a nonstarter as well. Why shouldn't we do what the Ninth Circuit did and say, even assuming that they're without deciding that there is a duress defense? There's not evidence that was put forward here that could possibly meet the duress defense. As we've interpreted, the court wants to proceed that in that manner, the government does not object to that. And we knew that is how a lot of these courts have addressed it by skewing the larger issue in like being the Sixth Circuit case petitioner sites and just finding there is no duress on the merits here. But the government did not proffer that because there's no fact finding below on that issue. Do you agree that the court to find facts, right? I mean, that's what those other cases have also decided is that it didn't even raise the issue. I'm sorry, Judge Rossman. But no, please, please continue. I'm done. OK, my question was, if we agree that there's no duress exception as a matter of law and found the new BIA decision persuasive, why wouldn't the fact of duress still be part of the circumstances that an IJ has a duty to consider in deciding on a case by case basis whether there is a serious nonpolitical crime at issue? Well, the BIA kind of goes through that as well. And that's why the government also set it to Aguilera-Aguilera, because it addressed a similar argument. That was an older, much older case. Much older case by the Supreme Court. But the Ninth Circuit below had imported a new factor to consider. In that case, it was the risk of persecution. And the Supreme Court explained in so many words, why would that be relevant when we're looking at one, just the nature of defense? That is what kind of common law character does it have? Shoplifting versus burglary? Is that what the nature of defense make it serious? And is it proportionate to any political aspect? That's the entire inquiry, with the exception of also, was there a crime committed, which is just a probable cause standard. So when you have the Supreme Court saying, why would anything else be relevant there, risk of persecution, the board is also saying the same thing. Why would that be relevant to this inquiry here? And that's when they get into the part about the criminal proceedings and how that would work into immigration proceedings. And they say that even in criminal proceedings, it doesn't controvert the elements of the offense that have been committed. And so meanwhile, when the statute is asking about commission of an offense, why would duress even be relevant? As the Supreme Court likewise said about the risk of persecution. Beyond that, they have the textual argument stating that it's not in the statute, that you shouldn't write words into the statute that aren't there. And that's what the Madame Noguse Attorney General came to the same conclusion for the persecutor bar. When it looked at this history of immigration statutes, particularly DPA, the Displaced Persons Act after World War II, and the Congress clearly knew how to write a voluntariness exception into the text that wanted that because it did so under the DPA. And the saying here, it did not do so. It's just looking at commission. That's a very specific inquiry. It's also a probable cause standard. It's not even asking for a conviction. It's just saying, are there reasons, serious reasons, to believe a crime was committed in this case? And that's all it asked for. And then, well, there's a political aspect. So I think Madame Noguse is very – or Madame Noguse, excuse me. This new BIA decision is very persuasive as to why there is no duress exception to the statute. Fishers, meanwhile, presented no reason why there would be. So I believe there is no duress exception the court should recognize in this case. Okay. Let's talk about the CAT issue. So generally, when there's an admission by – you seem to admit in your brief that at least some of the information relied on by the IJ was not in the record and that they mischaracterized it anyway. Generally, when that happens, you know, wouldn't we remand it back for reconsideration? I think what the panel seized upon earlier or was discussing with opposing counsel was that this is a totality of circumstances inquiry. The immigration judge provided two other reasons for why there was no CAT protection available in this case. And I would also – my last point about duress is that it does not leave someone without a remedy. They have CAT deferral, which is what petitioner went for in this case. So even in the absence of a duress exception – Well, I'm not sure it leaves her without a remedy. She has a right, but she has no remedy in this case. Exactly. She has not yet. So is someone still eligible to seek a remedy and protection? In this case, there's substantial evidence where the remedy does not apply for her. But it's a totality inquiry. And as the immigration judge said, like, well, first, looking at the threats that happen in this case, they undermine a clear probability of torture because it didn't act upon them in the three months that you were still in Honduras. And you see the concluding paragraph in the immigration judge's decision as well. It says, even assuming a risk of torture in your old neighborhood, that's insufficient to show you couldn't relocate in the entire nation of Honduras. So I think between those two, you have sufficient substantial evidence to affirm the CAT finding in this case. Is it your position that if you can make a showing on appeal that the – that the applicant for CAT protection did not prove that she couldn't safely relocate, that she loses? Does that make sense? Her burden. Failed her burden, yes. It doesn't make sense. No, that's not the government's position. It's not her burden. But what the government's saying here is that even if you – Whose burden is it to show that she can't relocate? Well, I think it's totality. So you're just looking at record evidence. Oh, I understand that. But somebody has to make the showing. I mean, you're not out trying to show that she can safely relocate, are you? Well, we're looking at the record evidence. And so the government and petitioner will submit their record evidence. And then the immigration judge makes a determination based on – But it's her burden by preponderance, isn't it? Her burden to show eligibility, yes. So there's no burden-shifting regime for relocation. Right. And I guess that brings me back to what I was – I mean, the burden is on her. So is it your position she has not met her burden with respect to any ability to relocate? That's correct. And the clear probability of torture, she hasn't met her burden, it's all part of that inquiry. Understood. Well, okay, so let's go back to that. So we were talking with your opposing counsel. I was talking to him about the three things that the IJ was considering or appeared to be – imminent threat, whether the acts amounted to torture in the first place, and the ability to relocate. If you find that any one of those is – of the first two I talked about are absent, do you ever even get to the relocation principle? No, I don't think so. It's totality. You can find there's substantial evidence. If that evidence supports the decision, that's substantial evidence in support of the immigration judge's decision. We also know, as far as this missing report goes, when Petitioner gets to the 2023 State Department report and the reply brief, it doesn't change anything. They discuss the report, and they say they take extractions from it about generalized crime. But generalized crime is not sufficient for a CAD claim. So even under Petitioner's theory, there's nothing to remand for because if this had been submitted into the record as an exhibit, it doesn't support her CAD claim. Actually, the lines she cites don't support it because it just points to generalized crime. She has to show a particularized risk. She would be at a risk of torture in this case. And that's what the immigration judge is looking at, saying, well, these gang members threatened you, but then they didn't do anything about it, so there's no particularized risk of torture in your case. And meanwhile, this happened in your neighborhood, as the concluding paragraph states, and not throughout all of Honduras. Nothing shows that this would occur to you throughout all of Honduras outside of your old neighborhood. But the analysis that we have to do is bound by how we review an administrative record, right? This is not a harmless error analysis. We have to look at the totality mediated by Chenery principles and what the administrative record allows us to conclude the IJ actually considered. Is that fair? That's correct. Okay. So with those principles in mind, I don't think we could agree that just because one factor isn't satisfied by preponderance, we can kind of cobble together the record in support of the denial of the petition here. We have to point us to what is it exactly that the IJ relied on that would make the error, which you seem to have acknowledged in footnote seven of your brief, not dispositive here. Well, the other two aspects of the immigration judge decision, what we would point to, the analysis of the threats and saying they were undermining your clear probability of harm, and you get past the exhibit and immigration judges concluding thought that this just happened in your old neighborhood. There's Honduras outside of your old neighborhood. And so why would there be a clear probability of harm throughout Honduras in that case? And that's the record evidence in this case. Do you agree that remand would be required if it was the record supported just exclusive reliance on the 2023 Human Rights Report? Well, I believe this court also recognizes futility of remand. And so that's why we're arguing also futility in this case, because that's why I pointed the panel earlier to their reply brief. What is in that exhibit, missing exhibit that would have changed anything in this case? Nothing. And also you have when you remand would go back to the record evidence. The board look at this exact same evidence again. Say, well, you had this testimony about gangs who needed you to go into a neighborhood because you couldn't go there. And you don't know the name of the gangs. You're not certain about which gang you were participating with. So the board to make what would be the record evidence that would the board would look at on remand to say you've established a cat claim in that case. And of course, looking at the same record evidence. And that's why we say you can still find substantial evidence supports the determination of this case. How do we know that if the district court didn't mischaracterize or misread the report that the decision wouldn't be different? There's just nothing cited at all for even a clear probability of torture. Everything undermines it at every step. So that's what the court could be confident there would be no difference in this case. Because Fisher never even pointed that themselves. They look at the definition of torture definition acquiescence. And that's what they're trying to put together for the court is unexhausted claims because they really have no great response to the absence of record evidence of a clear probability of torture. Thank you.  I don't have anything. Thank you. I don't have anything for you. Thank you. Let's give the appellant a minute and a half here. Thank you. Thank you, Your Honor. I do think it's very important that we brief the new case DGBL. But even as it stands, taking duress out of the equation doesn't take out all the other facts and circumstances, which really need to be explored. The way the regulation, what the regulation requires is first an allegation of serious reasons to believe, then an opportunity for rebuttal. Here, the allegation never took place until the final decision. There was never any opportunity for rebuttal. Are you talking about the prosecutor, the persecutor bar right now or Kat? I'm talking about the, it's not a persecutor bar. It's a serious reason to believe bar. And that's what I'm talking about. In other words, the, the, the, the IJ made that conclusion in her final decision. The applicant, Mr. Seals never had an opportunity to respond. We had opportunity to appeal to the BIA. You got to appeal it to the BIA. Yes, yes. Correct, Your Honor, we appealed it to the BIA, but we couldn't respond factually. We couldn't get testimony from Mr. Seals regarding the probability, her probability of, of being able to prove that there weren't serious reasons to believe she had committed a particular serious crime. That is what, if you look at via Lobos, well, she, hold on, hold on. You, it seems to me that your argument throughout has been a legal one that she established duress and that the IJ and the BIA had to consider duress. And that if they considered those, she won. Sounds like now we're making arguments about other things other than duress. Yes. That even if you don't get, even if you don't get duress or you didn't prove duress, that there are other things that you never got to talk about. Our argument has always been that a duress exception is not needed. Well, she, her own testimony, I mean her own testimony, she admits that she was involved in drug trafficking, right? She was forced. Well, again, you're going back to duress. So if you separate those. Partially duress, Your Honor, but if we have a chance to brief it, I want to explain that forced labor comes under the Trafficking Victim Protection Act. It's a completely different regime. We never said there was an exception for duress. The BIA came up with that in its decision. We only argued to consider all the facts and circumstances. The BIA is unhammered. You can't consider duress. There's no exception for duress. Okay. That isn't what we want. Thank you, counsel. You're out of time. Thank you, sir. I appreciate it. All right. Your case will be submitted and counsel are excused.